IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MEDRAD, INC., a Delaware corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 08 CV 5088 |
| v. | ) | |
| | ) | Judge Joan H. Lefkow |
| SPRITE DEVELOPMENT, LLC, SPRITE | ) | |
| SOLUTIONS, LLC, HANS MISCHE, LLC, | ) | |
| ROBERT BECK, LLC, Minnesota | ) | |
| corporations, HANS MISCHE, individually, | ) | |
| and ROBERT BECK, individually, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Medrad, Inc. ("Medrad") brought suit against Sprite Development, LLC ("Development"); Sprite Solutions, LLC ("Solutions"); Hans Mische, LLC; Robert Beck, LLC; and Hans Mische and Robert Beck (collectively, "defendants").[1] In Count I, Medrad seeks a judgment declaring that it validly terminated contracts between it and the defendants and that it has no further liability under those contracts. Count II alleges that Hans Mische, LLC, breached its contract by not assigning intellectual property rights and seeks specific performance. Defendants have moved to dismiss for lack of personal jurisdiction and improper venue under Federal Rules of Civil Procedure 12(b)(2) and (3). In the alternative, defendants ask this court to stay the case pending the resolution of a companion case filed in the United States District Court

---

[1] Medrad is a Delaware corporation with its principal place of business in Pennsylvania. Development, Hans Mische, LLC, and Robert Beck, LLC are Minnesota limited liability companies with their principal places of business in Minnesota. According to the complaint, Hans Mische and Robert Beck represented that Solutions was a Minnesota entity with its principal place of business in Minnesota, but in fact, Solutions never existed. Second Am. Compl. ¶ 10. Hans Mische and Robert Beck are both citizens of Minnesota. Thus, this court has diversity jurisdiction under 28 U.S.C. 1332(a)(1).

for the District of Minnesota. For the following reasons, defendants' motion [#30] is granted in part and denied in part.

## BACKGROUND[2]

In 2004, Medrad and Solutions started negotiating a contract to develop medical procedures and technology based on Solutions's intellectual property. Second Am. Compl. ¶ 16. On July 26, 2005, the parties signed the "Joint Development Agreement" ("development agreement"), with Mische and Beck signing on behalf of Solutions. *Id*. ¶ 18. Under the agreement, Solutions agreed to license its intellectual property to Medrad, and Medrad agreed to compensate Solutions and develop products for its intellectual property. *Id*. By way of compensation, Medrad agreed to pay Sprite an initial licensing fee of $250,000 and percentages of sales, with a minimum annual payment of $100,000. *Id*. In addition, Medrad agreed to make payments in connection with specific development milestones. *Id*. On August 1, 2005, Medrad signed consulting agreements with Hans Mische, LLC and Robert Beck, LLC. *Id*. ¶ 19. Under these contracts, Mische and Beck agreed to provide consulting services in connection with the development agreement. *Id*.

Medrad then spent more than two years and two million dollars researching and developing products for Solutions's intellectual property with some initial success. *Id*. ¶¶ 20-23, 26. On February 11, 2008, Solutions notified Medrad that Medrad had failed to make a $200,000 payment in connection with a development milestone. *Id*. ¶ 24. Medrad responded

---

[2] These facts are taken from the Second Amended Complaint and are presumed true for the purpose of resolving this motion. The background contains references to exhibits attached to the complaint and, thus, are a part thereof. See Fed. R. Civ. P. 10(c). In ruling on this motion, the court also considers proffered materials relevant to the issues of jurisdiction and venue. Disputed facts are resolved in Medrad's favor. *See Purdue Research Found.* v. *Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

that it had not yet successfully reached that milestone, and therefore, the corresponding payment was not triggered. *Id*. ¶ 25. On April 14, 2008, after unsuccessful negotiations and research trials, Medrad sent Solutions notice that it was terminating the development agreement.[3] *Id*. ¶ 26. The termination became effective on July 14, 2008. *Id*. ¶ 27. Pursuant to their terms, the consulting agreements automatically were terminated upon the termination of the development agreement. *Id*. ¶ 19. Hans Mische, LLC did not assign its intellectual property to Medrad, as required by the consulting agreement. *Id*. ¶ 29-30.

The development and consulting agreements contain nearly identical forum selection clauses. The clause from the development agreement is set out below:

> THIS AGREEMENT SHALL BE INTERPRETED AND CONSTRUED IN ACCORDANCE WITH THE SUBSTANTIVE LAWS OF THE STATE OF NEW YORK (AND NOT THE LAW GOVERNING CONFLICTS OF LAW). In the event of any disputes, controversies or claims arising in the connection with this Agreement or the breach thereof, the parties shall try to settle the problem amicably between themselves. Subject to Section 11.5.2, should the parties fail to settle such dispute, controversy or claim, within sixty (60) days from the first notice, each of the parties hereby irrevocably acknowledges and consents that an [sic] legal action or proceeding brought with respect to any of the obligations arising under or relating to this Agreement shall be brought in the United States District Court for the Northern District of Illinois, or if such court does not have subject matter jurisdiction, the courts of the State of Illinois located in Cook County Illinois, and each of the parties irrevocably submits to and accept [sic] the jurisdiction of such courts. Each party agrees not to dispute the jurisdiction and venue of the courts specified in the immediately preceding sentence, it being agreed, however, that if such courts, of their own accord, refuse to hear such matter, the venue of any legal action or proceeding will be the United States District Court for the Western District of Pennsylvania located in Pittsburgh, Pennsylvania for any action brought by SPRITE and the United States District Court for the District of Minnesota located in Minneapolis, Minnesota for actions brought by MEDRAD and each of the parties irrevocably submits to and accept [sic] the exclusive jurisdiction of such courts. Each party agrees not to dispute

---
[3] Section 9.2(a) of the development agreement gives Medrad "the right at any time and for any reason to terminate this Agreement upon a ninety (90) day written notice to SPRITE." Ex. A to Second Am. Compl at 13.

> the jurisdiction and venue of any court specified in the preceding sentence of this Section 11.5.1.

Ex. A to Second Am. Compl. § 11.5.1; *see also* Ex. B to Second Am. Compl. § 14; Ex. C to Second Am. Compl. § 14. These clauses were the subject of much negotiation between the parties. Initially, Medrad proposed a Pennsylvania forum and Pennsylvania law, Ex. G to Pl.'s Resp. ¶ 4, whereas defendants preferred a Minnesota forum and Minnesota law. Defs.' Mot. to Dismiss at 8-9. Defendants proposed an Illinois forum and Illinois law as a "mutually inconvenient" compromise. Ex. 2, Attach. C to Pl.'s Resp. § 14. After almost a year of negotiating the development agreement, the parties signed the contract, agreeing to an Illinois forum and New York law. Pl.'s Resp. at 4-5 (noting that five drafts with the final provision above were exchanged before signing the agreement). After the development agreement was signed, Medrad proposed Pennsylvania as the forum and law for the consulting agreements, but defendants insisted on forum and law provisions identical to the development agreement. Pl.'s Resp. at 5.

In accordance with this provision, Medrad filed its complaint on Sept. 5, 2008. The second amended complaint was filed on Feb. 3, 2009. On Jan. 30, 2009, Development, Hans Mische, LLC, and Robert Beck, LLC, filed a complaint in the United States District Court for the District of Minnesota against Medrad, alleging fraud, conversion, and breach of contract in connection with the development and consulting agreements at issue in this case.

## DISCUSSION

**I.     Personal Jurisdiction and Venue**

The plaintiff has the burden of showing personal jurisdiction and proper venue. *Purdue Research Found.* v. *Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). In ruling on motions to dismiss for lack of personal jurisdiction and improper venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3), the court may consider matters outside the pleadings, such as affidavits and other materials submitted by the parties. *Id*. Where the motion is decided on written materials, the plaintiff need only make a prima facie showing that personal jurisdiction exists and venue is proper. *Id*. In evaluating whether this showing has been made, the court resolves any dispute regarding relevant facts in the plaintiff's favor. *Id*.

A. **Forum Selection Clause**

Here, Medrad relies solely on the forum selection clauses in the development and consulting agreements as the basis for personal jurisdiction over defendants and proper venue. Second Am. Compl. ¶¶ 13-14. In the Seventh Circuit, a forum selection clause is prima facie valid and will be enforced unless the provision was procured by fraud or overreaching or enforcement would be unreasonable or unjust. *Paper Express, Ltd*. v. *Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992). In this case, defendants claim that they were fraudulently induced into signing the contracts and that they would not have agreed to any forum outside of Minnesota but for Medrad's misrepresentations. Specifically, they argue that Medrad misrepresented its experience in the relevant market, the extent of its resources, its intended cooperation with defendants, the creation of a development plan for defendants' intellectual property, the budgeting of funds and resources for the project, the expenses paid for clinical trials, the success of those trials, its intent to pay for and seek regulatory approvals, and its consideration of defendants' input.

The party seeking to set aside a forum selection clause bears the burden of showing that the clause should not be enforced. *Doe* v. *Cultural Care, Inc*., No. 09-cv-6126, 2010 WL 3075711, at *3 (N.D. Ill. Aug. 3, 2010). Where the party seeking to invalidate the clause alleges fraud, general allegations of the fraud are insufficient. *Scherk* v. *Alberto-Culver Co*., 417 U.S. 506, 519 n.14, 94 S. Ct. 2449, 41 L. Ed. 2d 270 (1974); *see Air Line Pilots Ass'n, Int'l* v. *Midwest Express Airlines, Inc.*, 279 F.3d 553, 556 (7th Cir. 2002). To invalidate a forum selection clause, the *inclusion* of the clause must have been the product of fraud. *Scherk*, 417 U.S. at 519 n.14. Even where a party alleges that an entire contract was procured by fraud, a forum selection clause will be found valid when there is no evidence that the clause specifically was obtained by fraud. *See Stephan* v. *Goldinger*, 325 F.3d 874, 879 (7th Cir. 2003). "The Supreme Court has cast the examination of fraud or overreaching as a question of 'fundamental fairness.'" *Doe*, 2010 WL 3075711, at *3 (quoting *Carnival Cruise Lines* v. *Shute*, 499 U.S. 585, 595, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991)). The question is whether the plaintiff had the ability to become meaningfully informed of the clause and to reject its terms. *Id*. at *4.

In this case, defendants cannot overcome the presumption that the clause is valid. The defendants' claim of fraud is general rather than specific. Although they claim to have relied on Medrad's misrepresentations in agreeing to this forum, none of the asserted misrepresentations is connected to the forum selection clause. Furthermore, the protracted negotiations regarding the specifics of the forum selection clause show that there was no unfairness. Defendants clearly were aware of the clause. Indeed, documentary evidence submitted by Medrad shows that defendants suggested this court as a compromise between the parties' home states. Ex. 2A to Aff. of Kathleen Dunst in Support of Pl.'s Resp. § 11.5. Defendants also had ample opportunity

6

to reject the forum selection clause. The negotiations over the development agreement lasted for about one year. Five drafts of the development agreement included the final version of the forum selection clause. Because defendants have not shown that the forum selection clause was procured by fraud, the clause is valid and enforceable.

> B. **Application to Individual Defendants**

For each party bound by the valid and enforceable forum selection clause, this court has personal jurisdiction, and venue in this court is proper. *IFC Credit Corp.* v. *Aliano Bros. Gen. Contractors, Inc.*, 437 F.3d 606, 609-10 (7th Cir. 2006) (describing a valid forum selection clause as a waiver of defendants' objections to personal jurisdiction and venue). The parties agree that Hans Mische, LLC and Robert Beck, LLC are parties to the consulting agreements. Therefore, they are bound by the forum selection clauses in those agreements, providing this court with personal jurisdiction over them. In addition, the parties agree that Solutions has never been a valid Minnesota limited liability company. Therefore, there is no entity over which personal jurisdiction can be had, and the complaint against it must be dismissed. *Palen* v. *Daewoo Motor Co., Ltd.*, 832 N.E.2d 173, 185, 358 Ill. App. 3d 649, 295 Ill. Dec. 22 (Ill. App. Ct. 2005) (citing *Tyler* v. *J.C. Penney Co., Inc.*, 496 N.E.2d 323, 327, 145 Ill. App. 3d 972, 99 Ill. Dec. 748 (Ill. App. Ct. 1986)).

The parties disagree, however, over whether Development, Hans Mische, and Robert Beck are bound by the forum selection clause. Defendants' motion made only two arguments: 1) that the forum selection clause was invalid and 2) that Mische and Beck were not individually bound by the contract. Because defendants did not argue that Development was not bound by the contract, that argument is waived for purposes of resolving the pending motion.

7

As to Mische and Beck, individually, the general rule is that individuals signing a contract on behalf of a nonexistent corporation (or a limited liability company) will be individually liable on that contract.[4] *Quebecor World, Inc.* v. *Harsha Assocs., LLC*, 455 F. Supp. 2d 236, 241 (W.D.N.Y. 2006); *see Am. Iron & Supply Co., Inc.* v. *County of Hennepin*, No. C0-96-2278, 1997 WL 396226, at *3 (Minn. Ct. App. July 15, 1997) (citing *Lenning* v. *Retail Merchants' Mut. Fire Ins. Co.*, 151 N.W. 425, 426 (Minn. 1915)). On the other hand, individuals are not liable if the entity is merely misnamed and there is no allegation that plaintiff was confused as to the true contractual party. *Quebecor*, 455 F. Supp. 2d at 242; *see Lenning*, 151 N.W. at 426. Mische and Beck contend that they are not liable on the contract because "Sprite Solutions, LLC" was merely a mistaken reference to "Sprite Development, LLC." But even if defendants simply made a mistake in naming the correct entity, they would still be held individually liable on the contract. Individuals will not be liable only *absent* an allegation that plaintiff was confused or misled as to the true party to the contract. *BCI Constr., Inc.* v. *Whelan*, 67 A.D.3d 1102, 1103, 888 N.Y.S.2d 272 (N.Y. App. Div. 2009); *see Lenning*, 151 N.W. at 426. Here, not only does Medrad claim it was misled, the defendants themselves appear confused. In their depositions, Beck and Mische admitted they do not know what Development is nor do they recall doing business on behalf of such an organization. Ex. D to Pl.'s Resp. at 63; Ex. E to Pl.'s Resp. at 20. Furthermore, another Minnesota corporation formed by Beck and Mische, "Sprite Solutions, Inc.," was dissolved only months before the contracts were signed. Ex. F to Pl.'s

---

[4] Mische and Beck do not dispute the applicability of the New York choice-of-law clause, but Medrad argues that Minnesota law should apply. Pl.'s Resp. at 14 n.6. Because the parties have not identified any relevant conflict between New York and Minnesota law, this court need not undertake a choice of law analysis at this time. *See Mass. Bay Ins. Co.* v. *Vic Koenig Leasing, Inc.*, 136 F.3d 1116 (7th Cir. 1998); *Townsend* v. *Sears, Roebuck & Co.*, 879 N.E.2d 893, 905, 227 Ill. 2d 147, 316 Ill. Dec. 505 (Ill. 2007).

Resp. With two similarly named entities and demonstrated confusion, individual parties cannot escape liability. Thus, the court concludes that the forum selection clause in the development agreement applies to Mische and Beck.

The motion to dismiss for lack of personal jurisdiction and improper venue will be granted for Sprite Solutions, LLC and denied as to all other defendants.

**II.      Motion to Stay**

In the alternative, defendants have moved to stay these proceedings until the litigation pending in the United States District Court for the District of Minnesota is resolved. Federal courts have wide discretion in determining whether to defer to concurrent litigation in another federal court. *See Calvert Fire Ins. Co.* v. *Am. Mut. Reinsurance Co.*, 600 F.2d 1228, 1233 (7th Cir. 1979). The court must balance various factors, including the desirability of avoiding piecemeal litigation, the order in which jurisdiction was obtained by the concurrent forums, the relative progress of the proceedings, inconvenience to the parties, and the source of law. *Clark* v. *Lacy*, 376 F.3d 682, 685 (7th Cir. 2004); *see Calvert*, 600 F.2d at 1233-34. This list of factors is not exhaustive, and no one factor is controlling. *Calvert*, 600 F.2d at 1234. Rather, the weight given to each factor is specific to the facts and circumstances of each case. *Id*.

The majority of factors cut against staying this case. Medrad first filed suit in this court almost five months before defendants filed in Minnesota. Although this circuit does not follow a strict first-to-file rule, *Trippe Mfg. Co.* v. *Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995), the filing order suggests that staying this litigation would be unfair to Medrad. In addition, the Minnesota litigation is no further along than this case, and even if this court were to stay this case, the litigation would proceed piecemeal. Most importantly, the parties chose to

9

litigate their disputes, pre-litigation, in this district through the forum selection clauses. Deferring to the Minnesota litigation would effectively allow defendants to circumvent the forum selection clause to which they agreed.[5] Thus, the court will deny defendants' motion to stay this action pending resolution of the Minnesota litigation.

## III. Rule 12(b)(6) and Transfer of Venue

Defendants' initial motion claims to seek dismissal based also on Federal Rule of Civil Procedure 12(b)(6). Defendants, however, have not developed this claim, and the court will not speculate as to the basis for such a claim. *United States* v. *Brown*, 899 F.2d 677, 679 n.1 (7th Cir. 1990) (noting that the court does not "construct legal arguments open to parties, especially when they are represented by counsel" (citations and internal quotation marks omitted)). In their reply brief, defendants also ask this court to transfer venue under 28 U.S.C. § 1404(a) if jurisdiction is found and a stay is not deemed appropriate. This argument is waived, however, as it was not raised initially. *See United States* v. *Matchopatow*, 259 F.3d 847, 851 (7th Cir. 2001). Even were the argument properly preserved, such transfers are disfavored when used to avoid a valid forum selection clause. *IFC Credit Corp*. v. *Aliano Bros. General Contractors, Inc*., 437 F.3d 606, 613 (7th Cir. 2006).

**CONCLUSION AND ORDER**

For the foregoing reasons, defendants' motion to dismiss [#30] is granted in part and denied in part. Sprite Solutions, LLC is dismissed. The remaining defendants have until September 21, 2010 to answer the complaint.

---

[5] Defendants' contention that the Minnesota fraud action would not be covered by this clause is wrong. In the Seventh Circuit, fraudulent inducement claims have been held to be sufficiently related to a contract as to come under its forum selection clause. *See Am. Patriot Ins. Agency* v. *Mut. Risk Mgmt., Ltd*., 364 F.3d 884, 889 (7th Cir. 2004).

Dated: Sept. 8, 2010  Enter: _____

JOAN HUMPHREY LEFKOW
United States District Judge