IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MEDRAD, INC., | ) | |
| | ) | |
| Plaintiff/Counterdefendant, | ) | |
| | ) | No. 08 CV 5088 |
| v. | ) | |
| | ) | |
| SPRITE DEVELOPMENT, LLC; SPRITE | ) | Judge Joan H. Lefkow |
| SOLUTIONS, LLC; HANS MICHE, LLC; | ) | |
| ROBERT BECK, LLC; HANS MICHE; | ) | |
| and ROBERT BECK, | ) | |
| | ) | |
| Defendants/Counterclaimants. | ) | |

## OPINION AND ORDER

Medrad, Inc. ("Medrad") brought suit against Sprite Development, LLC; Sprite Solutions, LLC; Hans Mische, LLC; Robert Beck, LLC; and Hans Mische and Robert Beck. After Sprite Solutions was dismissed from the case, the remaining defendants filed a counterclaim against Medrad for fraudulent inducement, violation of the Sherman Act, conversion, and breach of contract. The court granted Medrad's motion to dismiss the counterclaims on September 6, 2011, giving defendants until September 23, 2011 to file an amended counterclaim. (Dkt. #79, 80.) When defendants failed to file an amended counterclaim and failed to appear at the next status hearing, the court dismissed the counterclaims with prejudice pursuant to Federal Rule of Civil Procedure 41. (Dkt. #82.) Before the court is defendants' amended motion to vacate the dismissal order. (Dkt. #91.) For the reasons that follow, the motion is denied.

**BACKGROUND**

Medrad filed its complaint on September 5, 2008, seeking a declaration that it properly terminated a Joint Development Agreement and Consulting Agreements entered into with defendants. Up until approximately November 7, 2011, defendants were represented by local counsel and by Paul Egtvedt, a Minnesota attorney.

Throughout these proceedings, Egtvedt repeatedly missed and then requested extensions for filing deadlines ordered by the court. On July 31, 2009, Egtvedt missed the deadline for filing defendants' reply brief in support of their motion to dismiss Medrad's second amended complaint. Egtvedt filed the brief on August 5, 2009, accompanied by an agreed stipulation to extend time to reply. (*See* Dkt. #52, 53.) The stipulation states that extra time was needed because "counsel for Plaintiff [*sic*] has had a computer malfunction which will prevent him from being able to timely file Defendants' Reply to Plaintiff's Response to Defendants' Motion to Dismiss." (Dkt. #52.)

After the court denied the motion to dismiss, Egtvedt failed to file an answer by September 21, 2010 as ordered by the court. (*See* Dkt. #60, 62.) Seven days after the deadline passed, Egtvedt requested an additional two weeks to file an answer. (*See* Dkt. #62.) The court granted the motion requesting additional time, but Egtvedt then missed that deadline as well. Two days late, on October 14, 2010, Egtvedt filed defendants' answer and counterclaims without motion, explanation, or leave of court. (*See* Dkt. #63.)

Medrad timely moved to dismiss the counterclaims, and the court set a briefing schedule that ordered defendants to respond by December 30, 2010. (Dkt. #65.) Egtvedt did not file anything until January 19, 2011, when he asked for another six days to file defendants' response.

(Dkt. #68.) The reason given for the request was that defendants needed additional time to "properly respond to the arguments raised by Plaintiff." (*Id.*) Although the court never ruled on the request, Egtvedt filed defendants' response on January 25, 2011. (Dkt. #71.) Egtvedt also filed an amended answer and counterclaim, which the court struck because it was filed without leave of court. (Dkt. #76.)

On September 6, 2011, the court dismissed defendants' counterclaims without prejudice to re-filing amended counterclaims by September 23, 2011. (Dkt. #79, 80.) Egtvedt failed to file amended counterclaims, and the court scheduled a status hearing on October 4, 2011. Defendants did not appear. The court then granted Medrad's oral motion to dismiss the counterclaims with prejudice pursuant to Rule 41. (Dkt. #82.)

On November 7, 2011, defendants, represented by new counsel, filed a motion to vacate the court's October 4 dismissal order. (Dkt. #85.) The court denied the motion to vacate but subsequently gave defendants leave to file an amended motion to vacate or, in the alternative, to extend the date to file an amended counterclaim. (Dkt. #92.)

Defendants filed their amended motion to vacate on November 21, 2011. (Dkt. #91.) The motion is supported by affidavits from Hans Mische, Robert Beck, and their local counsel, Michael Johnson. According to the affidavits of Mische and Beck, Egtvedt failed to notify them of the court's September 6 and October 4 orders and failed to respond to Mische and Beck's calls and emails during the month of September. Egtvedt also failed to respond to Johnson's calls and emails regarding the court's September 6 order and the October 4 status hearing. Mische and Beck first learned of the order dismissing their counterclaims on October 5, 2011, from Johnson. Subsequently, on October 10, 2011, Johnson learned that Egtvedt was not

3

authorized to practice law in Minnesota. Johnson immediately notified Mische and Beck, who dismissed Egtvedt as their attorney on October 14, 2011.

On its own initiative, the court made an inquiry of the Minnesota Lawyers Registration Board and was advised that there was no record that Egtvedt had ever been unauthorized to practice law in Minnesota. The court ordered defendants to submit admissible evidence regarding Egtvedt's status. (Dkt. #94.) On December 5, 2011, defendants supplemented their motion with new correspondence from the Minnesota Supreme Court Lawyer Registration Office and the Minnesota Office of Lawyers Professional Responsibility. According to the Minnesota Supreme Court Lawyer Registration Office, Egtvedt's Minnesota lawyer license was transferred to inactive status, or "Not-Authorized to Practice in Minnesota," on May 24, 2011, for failure to comply with his CLE requirements. He was transferred back to active status by court order on October 18, 2011. The Minnesota Office of Lawyers Professional Responsibility represents that Egtvedt failed to pay his annual attorney registration fee on January 1, 2011, and that pursuant to the Minnesota Rules of the Supreme Court his right to practice law would have been automatically suspended until he paid his dues on April 6, 2011.

## DISCUSSION

### I. Applicable Legal Standard

Defendants' amended motion to vacate does not cite the Rule under which it was filed, and not surprisingly the parties disagree on the applicable legal standard. Medrad asserts that the court should consider defendants' motion under Rule 60(b). Defendants, in their reply brief, assert that the court's October 4 order is not a "final" judgment and therefore the court should

4

consider their motion under Rule 6(b). For the following reasons, the motion will be considered under Rule 60(b).

The court's October 4, 2011 order states that defendants' counterclaims were dismissed "with prejudice pursuant to Rule 41." The court's dismissal of the counterclaims "with prejudice" indicates that the order was final. Moreover, although the court's order did not state which subsection of Rule 41 applied, it is clear that the dismissal was an involuntary dismissal pursuant to Rule 41(b), which constitutes an adjudication on the merits unless the court specifies otherwise. *See* Fed. R. Civ. P. 41(b) (court may dismiss claims on motion of defendant if the plaintiff "fails to prosecute or to comply with these rules or a court order," and such dismissal "operates as an adjudication on the merits") & 41(c) (stating that Rule 41 applies to dismissal of counterclaims, crossclaims, and third-party claims); *Jefferson Elec. Co.* v. *Sola Elec. Co.*, 122 F.2d 124, 126 (7th Cir. 1941); 9 Charles A. Wright, et al., *Federal Practice & Procedure* § 2374 (3d ed.).[1] Therefore the court's October 4 dismissal order constitutes a final and appealable order and defendants' motion to vacate must be considered under Rule 60(b). *See* Fed. R. Civ. P. 54(a) ("'Judgement' as used in these rules includes a decree and any order from which an appeal lies."); Fed. R. Civ. P. 60(b) (setting forth the grounds for relief from a "final judgment, order, or proceeding").[2]

---

[1] Rule 41(a), in contrast, provides that a *voluntary* dismissal is without prejudice unless the dismissal order states otherwise. Defendants' counterclaims were not dismissed voluntarily; they were dismissed on plaintiff's motion. Therefore Rule 41(a) does not apply.

[2] Defendants did not meet the twenty-eight day deadline for filing a motion to alter or amend judgment under Rule 59(e).

**II.     Whether Defendants Are Entitled to Relief Under Rule 60(b)**

In their amended motion, defendants assert that their failure to prosecute was caused by Egtvedt's gross misconduct and that they were diligent in attempting to ascertain the status of their case and in responding to the court's October 4 dismissal order. This argument might implicate either Rule 60(b)(1) or (b)(6).

Rule 60(b)(1) authorizes courts to relieve a party from a final order because of "excusable neglect." The standard for reviewing whether neglect was 'excusable' is an equitable one, taking into consideration relevant circumstances, including (1) the danger of prejudice to the non-moving party; (2) the length of the delay and its impact on judicial proceedings; (3) the reason for the delay (*i.e.*, whether it was within the reasonable control of the movant); and (4) whether the movant acted in good faith. *Robb* v. *Norfolk & W. Ry. Co.*, 122 F.3d 354, 358 (7th Cir. 1997) (citing *Pioneer Inv. Serv. Co.* v. *Brunswick Assocs.*, 507 U.S. 380, 395, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993)).[3] In considering all of the relevant circumstances, the court may take an attorney's overall record of compliance into account so long as it is not the dispositive factor in the analysis. *Id.* at 362.

Defendants do not argue that Egtvedt's conduct constitutes "excusable" neglect, and indeed the record demonstrates that it was not. Rather, they argue that it would be unfair to hold Egtvedt's misconduct against them because they were diligent in attempting to file their

---

[3] Medrad argues that the court may only grant defendants' motion if defendants show (1) good cause; (2) quick action to correct the mistake; and (3) a meritorious defense. In support, they cite cases discussing the standard for vacating a default judgment under Rule 60(b). *See Jones* v. *Phipps*, 39 F.3d 158, 162 (7th Cir. 1994); *Breuer Elec. Mfg. Co.* v. *Toronado Sys. of Am., Inc.*, 687 F.2d 182, 187 (7th Cir. 1982). No default judgment has been entered. Therefore the court will not apply the more stringent and "narrow" Rule 60(b) test that has been formulated with an eye towards respecting the finality of judgments. *See Jones*, 39 F.3d at 162.

amended counterclaims once they learned of the court's October 4 order. Yet this argument is foreclosed by the line of cases holding that an attorney's negligence, gross negligence, or wilful misconduct does not constitute grounds for relief under Rule 60(b). *See, e.g.*, *Martinez* v. *City of Chicago*, 499 F.3d 721, 728 (7th Cir. 2007); *Easley* v. *Kirmsee*, 382 F.3d 693, 698–700 (7th Cir. 2004); *Tango Music, LLC* v. *DeadQuick Music, Inc.*, 348 F.3d 244, 247–48 (7th Cir. 2003); *U.S.* v. *7108 W. Grand Ave.*, 15 F.3d 632, 635 (7th Cir. 1994); *see also Long* v. *City of S. Bend*, 201 Fed. App'x 361, 364–65 (7th Cir. 2006); *Snyder* v. *Barry Realty, Inc.*, 60 Fed. App'x 613, 615 (7th Cir. 2003). Under the law of agency, an attorney is the client's agent and the client must be held accountable for the acts and omissions of his attorney. *Pioneer*, 507 U.S. at 396. Thus, in determining whether neglect was "excusable," the question is not "whether [the clients] did all they reasonably could in policing the conduct of their attorney, [but] rather . . . whether their attorney, as [their] agent, did all he reasonably could to comply" with orders of the court. *See id.* The fact that defendants are a business firm and two experienced businessmen reinforces the conclusion that they should be held responsible for their choice of attorneys in this case. *See Tango Music*, 348 F.3d at 247 ("The issue is whether Tango had a good excuse for failing to prosecute its case. It did not. It is a business firm, not a hapless individual, and it has to take responsibility for . . . the lawyers whom it hires."). In addition, Robert Beck is a licensed and practicing attorney in the state of Minnesota and the principal of his own intellectual property law firm. *See* Beck & Tysver, www.bitlaw.com (last accessed Apr. 26, 2012). Under these circumstances, defendants cannot "shift the burden of [their] agent's neglect to the district court and [their] opponents." *Tango*, 348 F.3d at 247.

Moreover, even before Egtvedt failed to file an amended counterclaim, defendants were on notice of his failure to meet the court's deadlines. The court's docket makes clear that Egtvedt was not always diligent in representing defendants' interests in these proceedings. Defendants could also have reviewed the documents that were filed by Egtvedt on their behalf, which contained obvious typographical errors and included repeated, but poorly-explained, requests for extensions of time. Thus, even if the court were to take defendants' post-dismissal diligence into account, it would be of limited significance.

Finally, in their reply brief defendants argue that it would be inequitable to deprive them of the opportunity to file their amended counterclaims because each of their counterclaims have also been asserted as defenses to Medrad's amended complaint. They assert that the court's October 4 order will "deprive [them] of the right to recover . . . damages that will, in any event, be litigated." The court is not convinced that all of the issues raised in defendants' counterclaims will be litigated during the course of Medrad's declaratory judgment action. More importantly, while it is true that defendants will be prejudiced by the court's order of dismissal, the prejudice is the result of their own actions and their agent's misconduct. Defendants have cited no case where relief was granted under Rule 60(b)(1) – or Rule 6(b) – on the grounds that the resulting sanction on the moving party, taken alone, outweighs the other considerations discussed above. For all of these reasons, defendants are not entitled to relief under Rule 60(b)(1).

Defendants' motion fares no better under Rule 60(b)(6), which is a catch-all provision that authorizes courts to relieve a party for "any other reason that justifies relief." In general, "relief from a judgment under Rule 60(b) is an extraordinary remedy and is granted only in

8

exceptional circumstances." *Reinsurance Co. of Am., Inc.* v. *Administratia Asigurarilor de Stat*, 902 F.2d 1275, 1277 (7th Cir. 1990) (citation omitted). Defendants' case is arguably similar to *Bakery Machinery & Fabrication, Inc.* v. *Traditional Baking, Inc.*, 570 F.3d 845 (7th Cir. 2009), where the appellant asserted that its attorney's gross misconduct provided the exceptional circumstances required by Rule 60(b)(6) and thereby attempted to distinguish its appeal from the "typical Rule 60(b)(1), 'bad attorney' case." *See id.* at 848. In *Bakery*, the appellant's attorney had missed numerous court deadlines, which resulted in the entry of a default judgment against the appellant for $582,000. *Id.* at 847. The appellant asserted that its attorney waited over two months to inform it of the default judgment and that during the prior nine months its attorney had repeatedly misrepresented that things were "going well" when it inquired about the status of the litigation. *Id.* In many respects, the facts of this case are similar to those in *Bakery*, although in that case the attorney's misconduct resulted in more tangible prejudice to the client. It is therefore significant that the Seventh Circuit foreclosed precisely the argument that defendants make here, holding that an attorney's gross misconduct, even with the client's diligence, does not constitute an "exceptional" circumstance that would justify relief under Rule 60(b)(6). *Id.* at 848–49. In doing so, the Court of Appeals reiterated that the law of agency provides that "all of the attorney's misconduct (except in the cases where the act is outside the scope of employment or in cases of excusable neglect) becomes the problem of the client." *Id.* at 848 (citing *7108 W. Grand Ave.*, 15 F.3d at 634). The court can discern no meaningful distinction between the facts of *Bakery* and defendants' case, and therefore defendants will not be afforded relief under Rule 60(b)(6).

While the court appreciates that the denial of defendants' motion imposes a harsh result, defendants' must look to Egtvedt for a remedy, not the court. *See Bakery*, 570 F.3d at 848–49; *Tango*, 348 F.3d at 247. The Seventh Circuit has made clear that "[d]eception of a client becomes the liability of the client's attorney and not the client's opponent." *Bakery*, 570 F.3d at 848. Particularly under these circumstances, where defendants comprise a licensed attorney and an experienced businessman, it would be inappropriate to shift the burden of Egtvedt's misconduct to Medrad, which then would have to bear the risk associated with litigating defendants' counterclaims. *See Tango*, 348 F.3d at 247–48. For all of these reasons, defendants' amended motion to vacate must be denied.

## CONCLUSION AND ORDER

For the foregoing reasons, defendants' amended motion to vacate [#91] is denied. This case is set for a status on May 29, 2012 at 8:30 a.m.

Dated: April 30, 2012         Enter: _____
                                    JOAN HUMPHREY LEFKOW
                                    United States District Judge